Mr. Schmidt, are you with us? I am. Great. Mr. Aranza? Yes. I am ready. Great. The next case is 19-3688 and 19-3757, Lana Starkey v. Amber Enterprises. Mr. Schmidt. May it please the court, I am Chris Schmidt, appearing on behalf of Amber Enterprises, Hy-Vee, and Mike Agostino. The primary issue in this appeal is whether a plaintiff, like Ms. Starkey, can state a retaliation claim when she admits that she was simply performing her job duties, concedes that those duties are why she reported the things that she did, and nonetheless contends that doing so amounted to protected conduct. The manager rule, which has been widely adopted and applied by many courts, including this one, provides that she cannot. The narrowness with which the Nebraska Supreme Court has repeatedly and recently construed the retaliation provision and issue dictates the same result. So this rule and those cases prevent Ms. Starkey from establishing protected conduct, which is a necessary element of the claim. Which of the Nebraska cases do you think implement the so-called manager rule? Well, I think that involves two questions, Judge Benton. The only one to allude to the manager rule is the Nebraska Court of Appeals' decision in Bond v. City of Omaha, and it didn't have to reach the manager rule because it determined that the conduct of the issue was outside the scope generally. But then there's a second part of that. So there's the manager rule, and then there's also just the general narrowness of the statute, which comes from cases like Wendown, Wolfe, and then just last year in McPherson. So that's kind of two reasons that she did not engage in protected conduct. Tell me the best black letter on, you don't have to call it the manager rule, what's the best language that you've got in these cases, or your position? Yes, it comes from an opinion that Judge Murphy wrote in SCAR, where she said that a plaintiff does not become a statutory whistleblower by, quote, merely exercising her job duties. Okay, that's a Minnesota case. I think we've got to stay with Nebraska, right? Correct. Okay, in Nebraska law, tell us the best language for you. On the manager rule specifically? Well, no, just the best for your position. In this case, it's part of her duties, so that ends the inquiry. Well, the court of appeals addressed that in Bond v. City of Omaha, which involved a public safety auditor who prepared a report regarding alleged discriminatory policing practices. And the court of appeals noted that it was part of her job duties to uncover that sort of information, and she prepared this report as part of her job duties. Now, again, the court of appeals did not explicitly have to reach the issue of the manager rule. The trial court did, and shows receptiveness to it, but the court of appeals didn't have to reach the issue because of how narrow the retaliation provision is. So, the narrowness of the statute has not forced the Nebraska appellate court to adopt or reject the manager rule. Then the secondary issue on appeal, I just want to touch on briefly, is that if Ms. Starkey can establish protective conduct, she still must point to evidence to show that the but-for cause, Amber's restructure and her reassignment, was retaliatory motive. And to do that, she has to get around Amber's reasoning, which includes an outside consultant's recommendations, an increasing desire for accounting expertise that Ms. Starkey admittedly lacked, attempts to remedy a chaotic transition to a new operating platform that required workflow changes, and then concerns about segregation of duties within a financial department that was in disarray. She must prove all of that as pretext. Then there are additional issues on cross-appeal. I understand that a jurisdiction issue has also been raised. I'm happy to answer any questions the panel might have about jurisdiction or other issues, but otherwise we'll focus on retaliation. Proceed. Hearing none, we've touched on the manager rule a bit already, but it does not allow an employee to establish protective conduct when, quote, they were merely exercising her job duties instead of stepping outside of their role. And that language that I cited there comes from this court's decision both in SCAR and in HBE, but it's consistent with how other circuits have interpreted and applied that rule as well. So here, Ms. Starkey was asked at her deposition, do your job duties include identifying and communicating concerns about Medicaid compliance? She said yes. She was asked if identifying the perceived overpayments here fell within her duties. She said yes. And then she went a step further and admitted, quote, that's why I reported the things that I did. So that's the big picture view on the manager rule and its application here. But I want to touch- Counsel, is she recanting those statements in her post-motion affidavit? She is. There were affidavits submitted by Ms. Starkey and two former co-workers who try and call that into question. But this court has addressed similar situations before. I believe Lichen is an example of a summary judgment-saving affidavit. But it's hard, and I would argue possible, to reconcile with her admissions at her deposition that that is why she reported the things that she did. She was asked, quote, that's how you were able to identify that some of these payments were suspect to you as overpayments, correct? Answer, yes. I don't know how she can say now in an affidavit offered at summary judgment that that testimony doesn't mean exactly what it says. So the rule in general, we've acknowledged and we don't contend otherwise that it has never been explicitly adopted by a Nebraska court. I acknowledge that Nebraska courts have perhaps shown openness to it in the bond decision. But then this court has adopted and applied it twice. First, HBE, which arose under Title VII in the Missouri Human Rights Act. And then in SCAR, which as you pointed out, Judge Benton, arose under the Minnesota whistleblower statute. But generally involves what role an employee's job duties and purpose for making a report when that becomes protected. There is a Nebraska law where the Nebraska Supreme Court says that they will look to federal court decisions on this NFEPA law. Correct. The problem I have with that is that, and I think my clerk's pretty exhaustive here, you've got circuits that go both ways, adopting and rejecting it. And they're a mixed bag of circuits too, I might add, what you might typically think. And all fairly modern cases. So where does that leave us? There is certainly a split. The 10th, 11th, 1st, and 8th circuits have generally adopted and applied the rule. Other circuits have not. I think the 5th circuit in Hagen outlines some of the rationale for it, which I think derives straight from the statute. The statute includes the term oppose. And in Hagen, the 5th circuit talked about how an employee who is performing their job duties is not opposing the company. They are doing exactly what the company expects of them. And that's further bolstered here by Ms. Starkey admitting that she did what she did, one, to do her job duties, and two, in an attempt to protect the company. That is not opposition conduct. And so I would argue that those circuits that have adopted and applied the rule were justified and warranted in doing so. And think that this case is a great situation in which to do so. So one other appellate circuit decision I wanted to touch on was authored by Justice Gorsuch in Weeks decision, which comes from the 10th circuit. And there, the plaintiff admitted and stipulated that everything that she did and alleged was protected conduct was in the course and scope of her employment. The same exact thing can be said here. So Justice Gorsuch there said that that stipulation doomed her case. Here, this testimony does for Ms. Starkey as well. Was that a question of state law or was it, pardon my ignorance, a question of Title VII or some employment law? The Weeks decision? Yeah. I believe that was Title VII. Say it again? I believe that was Title VII. Thank you. Correct. I do want to just, now that you had a chance to delve into these areas, I do want to go back and ask the question generally. The case is just before us on a rather strange procedural posture. And, you know, did the court, do you think the district court abused its discretion in exercising supplemental jurisdiction once it got past all the federal questions in this case? Abused its discretion in exercising supplemental jurisdiction? Yes. I believe that the district court had supplemental jurisdiction and actually addressed the FEPA issues first on the merits. Right. Well, here's the story. Once they resolved the federal question, they resolved the federal question, the district court did. At that point now, you've got discretion as to whether or not to exercise supplemental jurisdiction or to remand it all to the state courts. And the question is, should the district court, the United States district court, have really gone into these questions of state law, resolving these summary judgment issues on a whole bunch of state issues, and then remanding what's left? You know, I mean, it strikes me that either you're going to exercise supplemental jurisdiction or you're not. And this is an awfully odd decision where you just say, okay, I'm going to give my guidance to the state courts and say, you don't got to mess with any of these other statewide issues. And then send the one that they still think is alive back. Now, that strikes me as a district court. I mean, I did that job for 17 years. I would never have done that. I mean, if I had decided I was going to exercise supplemental jurisdiction, I would exercise jurisdiction over all the state law claims and just said, I'm doing it. But this sort of split the baby in half and provide your wisdom to state courts seems somewhat offensive to me and just ordinary principles of federalism. Well, I agree and certainly think that it's important that, as you noted, the district court did address the state law issues on the merits, which is arguably, and I think opposing counsel will argue, important to the issue of jurisdiction. As to an abuse of discretion, I don't think it was an abuse to necessarily, to do so, to rule on the merits, so to speak. But to not withhold the case is unique, as you note. And I actually noticed, I believe a month or two after this decision, I don't have the name of the case. But the district court encountered a similar scenario where they denied summary judgment on a state claim, but did exercise its discretion to retain the case and not remain it to state court. So I agree that it's unique. I don't think that it necessarily affects jurisdiction here. You're into rebuttal time. Yes, I would like to reserve that. You may. Mr. Aranza. Your Honor, may it please the court and Mr. Schmidt. This is a case involving a lady who worked for the company for a long time, very loyal and devoted. She saw some issues, some wrongdoing that had actually been going on for some time. And after she reported that wrongdoing in February of 2017, excuse me, 2015, there was a systematic move by the company to, by Amber and Heidi, to basically demote her to a position that paid half of what she was making. She was the only person involved in this restructure that was conducted by the employer. And it's interesting because initially she was told she was being demoted because of poor performance. And then two days later, they said, oh, wait a minute, we made a mistake. We're actually restructuring the company. We've got two different positions to choose from. Neither one of them pay you very well. So we feel causally that there's plenty of evidence to support that she was demoted for her whistleblowing activities. I would like to address the manager issue. It's true. There really hasn't been a Supreme Court decision, a Nebraska Supreme Court decision on this issue. And the case law goes all over the place. The circuits are split on whether to adapt this manager ruling. It's interesting. I'll take a look. Actually, I'll look at the employer's brief. And they cite some language from the Hagan case in which the Fifth Circuit explains his rationale for this type of rule and says that, well, in some positions, you know, people, you know, certain employees, this is what they do day in, day out. It would be difficult to distinguish between what is a part of their job and what in looking at those instances where they go outside the boundaries of their job. If you actually take a look at her job description that the employer is relying on heavily, there are 20 different parts of her job description, the different activities that she used to conduct. Well, focus on the one that says that she shall ensure all claims and reimbursement activities are in compliance with appropriate laws and regulations. Goodness gracious. Yeah, but it doesn't say that she is responsible for auditing them or doing any other than making sure. Your Honor, I like to compare this to a situation where you have a butcher who has a job description which said you're to comply and ensure compliance with all safety state and local safety violations. Does that mean that butcher has a job which requires him to go around and check to see if everyone else... Well, what if the butcher says at a deposition that they're responsible for identifying overpayments and cutting the meat and complying with that regulation? Well... I mixed all that to save your time. Yeah, it's her responsibility to see if there are overpayments. Although, her job was not to make sure that overpayments were taken care of. Her job was not to make sure that... To identify. Yeah, it was just to identify. And it was a blow-off. And in this instance, Your Honor, she identified, she found out the information initially not in a different manner because she did not have access to those records. So many of these records that... Many of these instances, she didn't have access to the records to begin with to say, okay, I need to go ahead and take care of these. You know, I need to go ahead and make sure that we are doing this correctly. She saw them. She reported it to the people who were supposed to take care of this. For example, Ms. Tomes, Mr. Weiss. And then ultimately, she ends up talking to the Hy-Vee Council about this. And even then, I believe it was Tomes and one other... The two individuals that were involved that were required to make sure that these overpayments were cleared and taken care of. They said, no, we've taken care of it. There are no overpayments. Come to find out, those overpayments haven't been taken care of. She ends up getting raked over the coals by Texas Medicaid. Texas Medicaid tells her, you guys are committing insurance fraud. And then again, she goes to her superiors and says, hey, listen, this is what they're telling me. I don't think that it's in the same vein as the Bond case. In which, you know, Hy-Vee relies on heavily. Where the whole purpose of that job is to report bad acts by the police. Council, maybe I'm not listening carefully here, but if you could just clarify for me. So is it your position that identifying and communicating these potential compliance problems is or is not within her job duties? Well, I don't believe that they are. I mean, I don't. I mean, I think that obviously if she sees them, she reports them as any good conscientious employee would do. But it's, you know, if you take a look, Mr. Weiss's job description and Ms. Tome's job description has the same language. Along with a whole bunch of other things. A whole bunch of people may have the same duty, right? I mean, different job descriptions for different positions may have overlapping duties. Sure. What I hear you saying, and I'm not sure I'm hearing you either because maybe I'm not listening as carefully as I should. But what I hear you arguing is that, in fact, she had some general duty in her job description to identify and report issues that came to her attention in her ordinary course of work. That's consistent with both the description and her testimony. But somehow, factually, these particular discoveries were outside of the ordinary gambit of the work that she did. And that she, therefore, reported them somehow outside of her job duties. And that's kind of a complex evidentiary idea for me. And I'm trying to figure out why we should believe that that's true. Well, one, if you accept, and I'm not sure that the state of Nebraska has clearly come down on this manager role. Oh, right. Yeah. And see, and I think that is the problem with the manager role. I think it is going to create a whole lot of evidentiary issues for the courts. But in this instance, her job duties were to collect. I mean, she was the head of the collection department. Those were her job duties. If she has an item in her job description that says, well, you're doing. That is the case. Her job wasn't a daily activity of making sure that they were following the law. In that position that she had, her job duty was to collect on overpayment. It was doing this. It was while doing this job, she ran across these issues of overpayment. And I think evidentiary-wise, I think that's something that we can establish without question. And Judge Buescher didn't really have any problems. He understood. Okay. Yeah, this is outside what she does. She is not the attorney in the Tenth Circuit case that was cited by the court. Or she's not any type of a compliance officer or auditor or that type of position where your job is to see what the company is doing wrong. Her job primarily, almost entirely, was to collect. And that's what she did. And she did a very good job of it. And that's why I just don't think, even if this court were to decide, okay, yeah, Nebraska law would adopt this question, adopt this manager role. They did not. Her position is not one of those that would conform with the manager role. So you've got a sometime manager role. Go ahead. No, that's an interesting question. I think, well, one, like I said, we're asking that they don't, that the Eighth Circuit does not adopt the manager role because the state of Nebraska has not. If it's done, though, there has been a determination already that this case can go to trial on the fact because she has gone outside of the boundaries of her job. And her job, like I said, was not to audit or review or report, not even on a daily basis, not even on a monthly basis. Again, the other thing I should mention, Your Honor, this manager role argument that the employer threw out there, that had never come up. Her job description and whether she was a part of this manager role or anything, that never came up. If you notice in our brief, Mr. Wise, when he interviewed with NEOC, said nothing about her role as a reporter of wrong activities or as some type of an auditor in her position. The depositions that were taken of management, higher up leadership, never said anything about this being the type of role that she should serve in her job. So this came up. And so what we see is basically we see Hy-Vee and Amber coming up with something at the end. Well, she said this in her deposition, you know, this comment, which she clarified in her declaration in response to the summary judgment. And then they come up with her job description, which, again, has a few items in it, which you would see in most any job description in that type of business. So, you know, again, I just feel that whatever this court does on the manager role, and I would hope that they wouldn't adopt it on behalf of the state of Nebraska, in light of all the different circuits that are going back and forth, and states are going back and forth on this issue. But even if they do, this is a case where she falls outside of that manager role by the fact itself. I'm not sure if I see my timer here. You got 246, 245, 245. Okay. All right. I would like to talk a little bit about dismissing Hy-Vee as the employer in this case. That was a baffling decision for us in that this whole process was pretty much engineered by Hy-Vee. Hy-Vee was taking over Amber Pharmacy at the time. It was controlled by the Hy-Vee Board of Directors. The decision to demote Ms. Starkey was made during a Hy-Vee Board of Directors meeting. Hy-Vee populated senior management with their employees. And it just seems clear that actually the entity in charge of this company and ultimately of the decisions to get rid of Ms. Starkey, or to demote her, I should say, were engineered by Hy-Vee and just moving Amber the way they wanted to move her. Also, just really briefly, the ADA issue, we feel that there, again, we are appealing that decision. We feel that actually there are sufficient, look at the comparators in particular. I think the trial court said that there were insufficient facts to assess circumstances for the comparators and that they weren't similarly situated and that their instances of alleged discrimination were not relevant. I will mention to the court that we did identify three individuals who were at that management level, very similar to Ms. Starkey. They were all over the age of 40. One was 49, one was 50, and the other one, I believe, was 50. And I would like to remind the court of its decision in the Berger case where it is not necessary for an employee to provide comparators that are clones of the plaintiff, of the aggrieved employee. And we believe that they were all in similar situations. Mr. Aranzi, your time has now expired. Thank you. Mr. Schmidt, rebuttal. Yeah, I would like to touch on just a few things that came up during those 15 minutes, and I'll start with the manager role. I wanted to point out that there was an issue raised by Mr. Aranzi about whether or not Ms. Starkey was able to identify these issues in the course of her job. And she was explicitly asked that at her deposition. Again, she was walking through her job duties in the job description on pages one and two of the addendum, and she was asked, quote, that's how you were able to identify these things. She said, yes. And then Judge Erickson, you already pointed out, but since the district court noted it as well, I did want to mention that overlapping duties has no role in the analysis of the manager role and whether or not it applies. A lot of times, companies with HR departments, in-house legal departments, compliance departments, or even just managers in general, have multiple people that do managerial functions. So what matters is whether or not the employee had that within their job duties and whether they stayed within those duties. And here, the answer is yes. Judge Erickson, you also mentioned potential evidentiary issues with the manager role. And I could see scenarios where that would become difficult. I don't think that this case is one of those. We're able to look at her job description, pages one and two of the addendum, bullets four, seven, eight, nine, 13, 14, 15, all speak directly to what she is now alleging engages in protected conduct. And while we put a lot of reliance on that, because I think employers get to say what an employee's job functions are, she acknowledged and admitted all of those things at her deposition and even went so far as to say that those duties are, quote, why I reported the things that I did. There was also mention about the Fifth Circuit's opinion in Hagan and talking about the policy behind the manager role. And that kind of leads into causation, which we didn't get to talk about much during my initial segment. But when employees are doing their job, they are always going to be engaging in protected conduct. When they're a manager in a compliance position. And so it's no surprise that here timing is a big thing that Ms. Starkey points to to try and prove pretense. But that just does not make sense. And one, it's not enough. Judge Gross, in a recent opinion from you, you talked about a situation where an employee filed an NEOC complaint, 15 days later was suspended, and then 15 days after that was terminated. And the panel correctly looked at its precedent to say, that is not enough. And it was actually especially weak, given all that was going on here. And in this case, that involves a restructure, CPR plus transition, other things. So with that, I'm inspired. Thank you for the argument. Cases 19-3688 and 19-3757 are submitted for decision by the court. Court is adjourned.